All right, Ms. Kohler, you may proceed when ready. Good morning. Good morning. May it please the court, my name is Susan Kohler and I represent the plaintiff in this matter, Mary Doucette, and I'm from the law firm of Holland & Associates. This case is an appeal of the district court's granting of summary judgment to Morrison County on plaintiff appellant Mary Doucette's claims of sex and sex plus age discrimination. Doucette asked this court to reverse the district court's decision because a reasonable juror could infer from the evidence offered that the reasons given for her termination are not the true reasons, but a subterfuge for discrimination. May I just ask you a quick procedural question? Sure. The briefs for some reason in this case are designated under seal. Are these briefs for some reason not to be a matter of public record? Or did the clerk grant leave to file them under seal? The clerk did grant leave to file them under seal. I believe that... Why? That some of the matters referenced are personnel matters relating to Morrison County, and perhaps Ms. Ebert could provide you with greater clarification on that. We only sought to file it under seal because all of their documents were filed under seal. You mean the district court record is partly under seal? Yes. All right. Well, it's a little bit unusual, but we'll look at that. Go ahead. I'm just presuming that if Ms. Ebert had any concerns about this hearing that she would have filed something. No, I'm not saying the hearing should be closed. I'm wondering whether the briefs should be open. Go ahead. Go ahead on the substance of the case. Thank you, Your Honor. Plaintiff's position is that the evidence when viewed as a whole and in favor of Ms. Doucette creates a genuine issue of fact, whether Doucette was terminated because she is a woman, and in particular because she is an older woman. And in the course of my introductory argument, Your Honor, I will cover the similarly situated comparable employees issue and the sex plus age claim issue primarily. And I will rely on the brief primarily for the other matters. Ms. Doucette was 55 when she was terminated in November of 2011. She had worked 31 years in Morrison County, 17 years as an assistant jail administrator. In October of 2009, she received a performance review where her managing of financial records and records management was deemed exceeds expectation. A year later, she was receiving multiple disciplinary warnings that led to her termination in November of 2011. In essence, plaintiff's position is that Morrison County assembled a group of expected and fixable billing errors related to a very small portion of her job. And then disciplined her for those errors until it had a record to justify her termination. In this matter, Doucette does not need to disprove the reasons given by Morrison County for her termination. She only needs to establish a question of fact that her sex and her sex plus age played a role in Morrison County's decision to terminate her. Now, Ms. Doucette is in a very difficult situation because the Morrison County will be able to parade out a series of documents saying that she had made mistakes in the course of her work. And that she had committed various transgressions even though the transgressions related to a very small portion of her job. What she is claiming is that Morrison County was exaggerating those incidents to build a case for her termination. And that her alleged conduct was no worse than other jail employees whose performance could also have been criticized. The challenge is that employers generally don't keep a list of employees who could have been disciplined but were not disciplined. And so this situation for Ms. Doucette was confounded by the district court's disregard of relevant evidence. That she was being differently treated than other jail employees. There is one bit of information I would like to hear you comment upon. I made a note that the record reflects that there were only 15 instances of other employees in the Sheriff's Department being formally disciplined since 2006. And the appellant in here, in this case I think, had five instances of discipline. Your Honor, the difference there is where the Morrison County Sheriff's Office had two sides. It had the sheriff's side which were the people that went out on the road. And then it had the jail side. The appellant's count was only of the employees on the jail side. Because it is appellant's position that it would be the people and the employees on the jail side who would be similarly situated to her. And so the numbers that should be used are the numbers that relate only to the jail side. And that's where the disproportionate discipline becomes very obvious. Because there were 30 to 35 people on the jail side. And over that course of five years, there were only four people disciplined five times. One of those was an alcoholic, another, well, that was the primary one that is obviously a situation that would cause harm. At the same time, Ms. Dosette, prior to her termination, had been disciplined six times, plus then her termination, which would be number seven. So the disproportionate amount of discipline imposed upon Ms. Dosette becomes very obvious in that circumstance. And with that in mind, I would like to – Well, I mean, you're not challenging the errors that gave rise to these instances, are you? No, Your Honor, we are not. I'm sorry. There's really no question here about the billing errors and the history as it is of errors that were made by the appellants. I'm not sure I understand your point. If there's no challenge to the fact that these errors were made, how do you leap from there to challenging the discipline themselves? Your Honor, our challenge is that if Ms. Dosette had been a male, and particularly an older male, that that conduct would not have received the disciplinary treatment that it did. We will admit that she was not a perfect employee. But she also cited other instances of other employees in the sheriff's department on the jail side who committed errors or mistakes in the course of their responsibility that would be equally vulnerable to discipline if the discipline was being distributed in an even-handed way. So, for example, if you – Isn't the record of discipline for this time period basically the same for male and female, the number of instances of discipline? No, it's not, Your Honor. Number one, that count of 15 does not include Ms. Dosette's disciplines. I don't believe. And if you only look at the jail side, Ms. Dosette, as an older female employee, was disciplined far more than any of the other employees. And that actually leads to – Well, what's your best example? The district court says, setting aside Dosette, there were eight disciplinary actions against men and seven against women since 2006, and therefore there is no evidence of disproportionality. Your Honor – I guess you say, well, if you add in Dosette, then it's disproportionately female, but is that your whole argument, or do you have some specific employee who's a man who you think did the same thing Dosette did without discipline? Yes, Your Honor. I mean, first of all, we do believe that the proportion is – obviously shows a focus on her behavior more than on older men's behavior, especially if you look at just the jail side. Now, in terms of a specific – I will cite two specific employees who are deemed similarly situated from the plaintiff's position. The law is very clear as to how you begin to look at who is similarly situated to somebody. The law says that you look at who the decision makers are, you look at whether the same standards are applied to those people, and then you look at whether or not – if there's misconduct involved, you look at whether that misconduct is at least as severe and frequent. Now, Ms. Dosette's position is that the employees on the jail side of the Morrison County are similarly situated to her in the sense that they are all subject to discipline by the same decision makers, Lieutenant Meneer and Sheriff Wetzel. There is very clear testimony in the record that Sheriff Wetzel said that he was the only one who could issue discipline and that Dosette had no authority to do that. Ms. Dosette also was subject to the same standards as all of the other employees on the jail side, and I'll get to specific names in just a minute. They all were union employees, they all were hourly employees, and they all were subjected to the same progressive discipline and to discipline and termination procedures mandated by their collective bargaining agreement. So presumably, they were all expected to meet their job responsibilities. So in that regard, Ms. Dosette is similarly situated to the other people on the jail side, including specifically the STS crew leader, Mr. Brummer, and a correctional officer, Dale Shrout. Now, the defendants claim that because they did not have the same job title, that they could not be similarly situated. There is nothing in the law that requires the same job title for persons to be similarly situated. As long as they have the same decision maker, the same standards, and then if there is misconduct involved that at least is as severe or frequent, then it becomes a question of fact for the trier of fact to determine whether or not discrimination has occurred. With respect to Mr. Brummer, Ms. Dosette testified in her declaration that he engaged in multiple violations of safety code in supervising the prisoner crew that he was responsible for, including working without safety vests or hard hats and having inmates use chainsaws without protective chaps. She also alleges that Mr. Brummer had three annual reviews in a row containing deficiency ratings with respect to chronic processing standards. And she also claims that Mr. Brummer failed to receive certification for proficiency on equipment and training that was required for all correctional officers. This one example shows an employee who engaged in chronic, persistent failure to meet the requirements of his obligations. He was subject to the same decision makers, Lieutenant Menier and Sheriff Wetzel, and he was not disciplined. Ms. Dosette's declaration should be considered in this regard. I know the defendant will say that the declaration is merely an allegation. It is not. Her declaration, which is admissible under Rule 56, contains her statements of fact about Mr. Brummer's performance. We also would cite Dale Shrout as another example, although I think the Brummer example is sufficient to show that there was a similarly situated employee who was treated differently than Ms. Dosette. He was an older male. She was an older female. And we would claim that that is sufficient to take this case to a jury. I think I will stop here and reserve my remaining time to respond to things that Ms. Ebert raised. Very well, you may. Thank you for your argument. Ms. Ebert, we'll hear from you. Good morning. May it please the court, counsel. My name is Diane Ebert. I'm with the law firm of Quinlivan & Hughes, and I'm here on behalf of Morrison County. Let me first address the issue that was raised by the court relative to filing the documents under seal. I believe if you look back at the district court record, you will see that our motion for summary judgment was only partially filed under seal, consistent with an order from the district court relative to the Minnesota Government Data Practices Act, and some of the information that was relevant to discovery but not public had to be filed under seal. And so we did do that with portions of our summary judgment motion, not the entire motion itself, but the way the district court processes work is we had to file placeholders and blank pages, and we filed the complete motion under seal that did not have those same redactions. When it got to the appellate level, as the appellee versus the appellant, the first foray into the requirement to seal the brief was made by Ms. Kohler's office relative to the appellant's brief, and it was filed completely under seal at the direction of the clerk's office versus it being sort of partially filed under seal for those portions of the record like we had done under the district court. So when it got to the point where we were filing our brief, the same procedure was in place again after consulting with the clerk's office. I don't know if that answers your concerns about that. Well, is there anything that needs to be filed under seal in your view? Yes, Your Honor, there are. Some of the information relative to specific instances of employee issues that did not result in discipline under the Data Practices Act is not public information. It's only when it results in discipline, and there's sort of the rub we get into under 30. But when it's evidence in a federal lawsuit, I just wonder whether that state statute governs. I mean, if there were a trial in this case, would the courtroom be closed when those instances are? I'm not sure about that. I mean, I've never heard of that. There's a protective order in place in the district court, and the language from the protective order refers to matters being filed under seal. Well, we can look at it. If you're saying that you don't think everything should be under seal, then at a minimum it sounds like some of this material should be publicly filed, and maybe we'll ask the parties to address it in writing, and we can figure it out. But why don't you address the merits of the appeal? Sure, Your Honor. A couple of things I want to point out is Ms. Doucette has routinely made much of the fact that she has a long history of employment with Morrison County, which is indeed true. But what is also true, and which I believe Your Honor pointed out in one of the questions when Ms. Kohler was up here, is that there is absolutely no dispute that Ms. Doucette made errors beginning in January of 2007, and errors that were both deemed to be significant by Morrison County, which she was told she needed to correct, and which she acknowledged had been made. That's all very significant, because while an employee's prior performance history is certainly relevant to an issue as to whether or not the court could draw an inference of discrimination, that history becomes less relevant when there's also evidence of misconduct, which clearly there is on this record. Excuse me. Ms. Doucette fully acknowledged and admitted the errors that she made. And it's not for this court to decide whether or not those are big deals or not big deals. There's a very strong line of cases that says a court does not sit as a super personnel department to oversee whether or not the employer should consider an infraction by an employee to be a big deal worthy of discipline. That's the employer's prerogative. An employer like Morrison County has the right and the ability to determine what parts of a job are important and need to be paid attention to more precisely by their employees. And that clearly happened in this particular instance. The record is very, very clear that Ms. Doucette was repeatedly told that these types of errors that she was making were not going to be acceptable to the administration and the department. So it should come as no surprise that when being warned and being told several times that these errors were going to be the focus of review and going to be highlighted by the administration, that they actually followed through on that and made decisions relative to discipline associated with Ms. Doucette's performance. What about the other folks that she says were similarly situated? Yes. On that particular issue, Your Honor, a couple of different things. We have argued that there's no evidence of these employees being similarly situated at either the pre-tech stage for the inference of discrimination, but perhaps even more importantly at the prima facie phase but also at the pre-tech stage. And that distinction is important because it's very clear by case law that determining whether or not an employee is similarly situated is a rigorous standard. That's the phrase that comes from a lot of the cases is that it's a very rigorous standard. Is there anyone similarly situated to her? There may not be. Ms. Doucette, if you look at the deposition testimony, she was very clear, and it was a very long deposition. She said quite without any hesitation, nobody else did her job. Nobody else had the same job responsibilities that she did. Nobody else could do her job. Conversely, though, she said she could do the jobs of the other employees that worked below her in the department. Now, Ms. Kohler has made the argument that doing the same job is not a prerequisite to the similarly situated statute, or excuse me, standard. But it's not the point that they're not doing the same job that we're really focusing on. It's that Ms. Doucette made objective, undisputed, repeated errors on a critical part of her job that her supervisors had told her and warned her about for years by the time of her termination. Conversely, the individuals that she was referring to, Mr. Brummer and Mr. Shrout, she generically refers to what I will refer to as sort of subjective errors in the performance of their work. Nothing that she said demonstrates a clear violation of a directive that was given to them by a particular supervisor. And I want to comment just briefly on the declaration. With regard to Mr. Brummer in particular, and I know that Ms. Kohler has argued in her, or Ms. Doucette's brief, that she wasn't asked to give every instance where she thought another employee misbehaved and wasn't disciplined. But if you look through, she refers to it as having asked for examples, and she gave one example. Not the examples that she gave in her declaration, by the way, which is really the point. But if you look at the deposition, I gave her every opportunity to tell me every example that she wanted us to consider as being evidence that someone else did something similar to what she did and wasn't disciplined for it. The claims that Mr. Brummer violated safety policies is never mentioned during that deposition. So to come in at the 11th hour when faced with a summary judgment motion with a 50-page declaration, it was properly disregarded by the district court because it was inconsistent with that deposition testimony. But perhaps more importantly, simply putting something in a declaration doesn't automatically make it evidence. If you look at the summary judgment standard, it specifically talks about it has to be something than mere averments. The burden has always been on Ms. Doucette in this case. She should have done something more than simply file a declaration that says, these are my thoughts on what happened and my observations. She had an obligation throughout discovery to adduce independent evidence to substantiate her claims. And she never did that. The Davenport v. Riverview Gardens School District case, an Eighth Circuit decision from 1994, makes it very clear that you can't just rely on an averment. And a self-serving declaration like this is really no different than the facts that she claimed in her summons and complaint. All declarations are self-serving. The question is whether it's admissible evidence. If she says, I saw this man do something and they didn't discipline him, then that would be evidence. If she says, well, I heard this third hand or something, then you might say it's hearsay. But I don't know that it's sufficient just to say mere averments are inadmissible or inadequate or self-serving declarations are inadequate because all declarations are self-serving. And I understand that distinction. But when you couple that with the deposition testimony where she was specifically asked for this information and didn't give it to me, then you've got this sham affidavit trying to create a factual dispute that doesn't exist otherwise. Well, you mean the Camfield case? That's a very narrow. Normally, that would go to credibility, wouldn't it? It may go to credibility. Which would not be a basis to disregard it. It would just be a basis to say it's a credibility question. I do have some cases that say you can't contradict your deposition at the last minute and put in an affidavit afterwards. That's considered a sham. Maybe that's what you're referring to. That's really my point is that when you look at the deposition transcript as a whole, I didn't simply ask Ms. Doucette, give me one example of something another employee that you believe was similarly situated to you did but what didn't result in discipline. I said, give me an example. And she would give me an example. And I would say, give me another example. And finally, at one point, I follow up with a question. All right, is there anything else that we haven't already talked about that you think is relevant to this particular issue? And the answer is no. So there is an element of it being inconsistent, her declaration, again, coming at the 11th hour. I want to get back to the question about the- Did the district court, I forget, did the district court consider the declaration? She considered the declaration to the extent it wasn't inconsistent with her deposition testimony according to a footnote in Judge Montgomery's order. Okay. I want to get back to the similarly situated question that was raised because I think I've sort of strayed from that. In order for an employee to be similarly situated, the case law is also very clear that the misconduct must be of comparable severity and frequency. There is absolutely no employee within the department who has a comparable frequency to the errors made by Ms. Doucette in this case. And that is very undisputed. Ms. Doucette points to a performance evaluation of Mr. Brummer where it says that he should improve his booking procedures. What the record also shows, however, is that Mr. Brummer wasn't responsible for booking on a day-to-day basis as an STS crew leader. So during his performance reviews, they said, we want you to remain proficient. And if you look at Sheriff Wetzel and I believe Lieutenant Monier's deposition testimony, it's not that Mr. Brummer made errors in booking. It's that he was slow in doing the booking process. So that's not the same as having someone like Ms. Doucette who a part of her job required her to do bookkeeping and to not make errors that she was repeatedly making. But a small part, right? I mean, isn't it undisputed it was 5% or so of her work? No, Your Honor. 5% is the figure, again, that came from Ms. Doucette's declaration, which is inconsistent with her deposition, and which is also inconsistent with the job description, which says it's a 20% bookkeeping and things like that are a 20% aspect of her job. So the parties disagree on what percentage is actually the bookkeeping element of her job? No, I don't believe there's a disagreement. What we have is Ms. Doucette saying that despite the fact that her job description says it's 20%, she only spent 5% of her time on the things that are at issue, which it sort of goes precisely to the point. It doesn't really matter if it's 1% or 99% of the job. As the employer, the employer gets to decide what part of a job is important and what part of a job should be focused on by their employees. In this particular case, there is absolutely no dispute that Ms. Doucette was told repeatedly that not only is this part of your job important, but it's something we want you to focus on and to avoid making errors. And she made repeated errors in that particular area. So by even paying mind to a claim that it's only 5% versus 65% or 20%, the court then is stepping into the role of acting like, is that a big deal or should that be a big deal to the employer, which is not the court's role. Again, that's that line of cases that says that the court doesn't get to tell the employer what's important or what should be important to them. They just have to come in and say, all right, is there anything about what the employer did that infers discrimination in its decision making, not the actual decision process itself? I want to also point out, with regard to Dale Shrout, it's ironic to me that they would raise him as a comparator when the record is very clear that when Ms. Doucette did complain about something that Mr. Shrout did, he was disciplined for it. So to suggest that somehow he was treated more favorably is simply inconsistent with the information that's in the record. I'm not going to get to address the six plus age issue because I'm running out of time unless the court would indulge me just briefly. Well, I think we may understand the case and it's been well briefed. So why don't we just leave it at that and thank you for your argument. Thank you, Your Honor. Ms. Kohler. Thank you. The law is very clear that an imperfect worker is to be protected from discrimination as much as the perfect worker. That's a circuit statement in stack. Similarly, the United States Supreme Court in McDonnell Douglas cited in our brief says that an employer can refuse to rehire somebody who engages in illegal activity only if that same criterion is applied alike to members of all races in that circumstance. So the question here and what's happening is exactly what I predicted and stated was the problem in this case. When the plaintiff's assertion is that other people who engaged in chronic failures to perform responsibilities relating to their job were not disciplined, of course there's not going to be the same record that there is for her when it appears that the employer specifically focused on her, singled her out for numerous mistakes that indeed were a very small part of her job. And so I think this points out the problem and it points out the importance of looking at the evidence offered of comparators and allowing a trier fact to decide whether or not those comparators are similarly situated in the sense that their conduct is at least as egregious, if not more egregious than the conduct of which Ms. Doucette was accused, which never resulted in any payments required to be made by the county. And the county stated that those mistakes were embarrassing to the county or impacted their relationships with other people, but completely failed to rebut her testimony that she had excellent working relationships with other counties and that these kinds of issues were the kinds of things that came up all the time in a very fast-moving environment. With respect to the deposition testimony and Ms. Doucette's declaration, the judge dropped a footnote and said that she was discounting parts of the declaration that were inconsistent but never articulated which parts she paid attention to and which parts she did not pay attention to. And I would assert that that is contrary to how this court reviews whether or not it's fair to discount parts of a plaintiff's declaration because the declaration is evidence just as a deposition testimony is evidence. And I looked when I was sitting there, and I know that at the very end of her deposition, Ms. Ebert asked Ms. Doucette whether there was anything else. And she said, that's all I can think of right now, or that's all I can remember. Something to that effect, saying I've given you the best I can do today, but there may be other things that come up. So I don't think that her deposition testimony should be limited and that the declaration should be given effect. And it's more really- We appreciate it. The case is submitted and we will file an opinion in due course.